DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Anthony Suggs, appeals from his convictions of aggravated burglary and abduction in the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On June 25, 2003, at approximately 2:00 a.m., two Akron police officers were dispatched to the Keys Place apartment complex. Shortly after the officers arrived, Temea Hilton came running toward them, screaming, "He's crazy. He's crazy. Protect me." According to the officers, Hilton was frightened and kept looking over her shoulder.
 {¶ 3} The officers' investigation revealed that Mr. Suggs had come to the building, looking for Hilton, a current or former girlfriend.[1] Mr. Suggs initially went to apartment number 1171, where he believed Hilton would be (the "downstairs apartment"). He knocked on the door and S.R., a 14-year-old girl who was inside with some friends, looked through the peephole and did not open the door. Mr. Suggs then opened a window and climbed in. Mr. Suggs asked S.R. where Hilton was and, when S.R. told him that Hilton was babysitting at the apartment directly upstairs ("the upstairs apartment"), he demanded that S.R. come with him to find her.
 {¶ 4} Because Mr. Suggs repeatedly threatened S.R., she accompanied him to the upstairs apartment. Mr. Suggs demanded that S.R. knock on the door, which she did, but no one answered. Mr. Suggs then kicked the door in, causing visible damage to the closing mechanism of the metal door. Once inside, he discovered Hilton with another man. Mr. Suggs entered the apartment and began hitting both of them, but Hilton and her companion both fled the building. Mr. Suggs grabbed S.R. by the arm and demanded that she accompany him out of the building and down the street to look for Hilton.
 {¶ 5} Apparently when Mr. Suggs realized that the police had arrived and were looking for him, he left S.R. and attempted to evade the officers. The officers eventually found Mr. Suggs hiding in the utility room of another apartment building. Although Mr. Suggs was arrested and charged with several counts of aggravated burglary and kidnapping, all but one count of each crime was later dismissed. Following a jury trial, Mr. Suggs was convicted of aggravated burglary and abduction, a lesser included offense of kidnapping, in violation of R.C. 2911.11(A)(1) and2905.02(A)(1), and sentenced accordingly.
 {¶ 6} Mr. Suggs appeals and raises three assignments of error.
 II. A. First Assignment of Error
"The appellant's conviction was against the manifest weight of the evidence."
 Second Assignment of Error
"The court improperly denied appellant's motion for acquittal Per Crim. Rule 29."
 {¶ 7} We will address these assigned errors together because they are closely related and Mr. Suggs argued them jointly. Mr. Suggs contends that his convictions were not supported by sufficient evidence and that they were against the manifest weight of the evidence. Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that, construing the evidence in a light most favorable to the prosecution, "reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." State v. Wolfe (1988),51 Ohio App.3d 215, 216, citing State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus.
 {¶ 8} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citing State v.Thompkins, 78 Ohio St.3d 380, 390, 1997-Ohio-52 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
 {¶ 9} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
"Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 10} Mr. Suggs contends that the evidence did not support his convictions of aggravated burglary and abduction. This Court will address his challenge to each conviction separately.
 {¶ 11} First, Mr. Suggs challenges his conviction of aggravated burglary. Mr. Suggs was convicted pursuant to R.C.2911.11(A)(1), which provides:
"No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if * * *:
"The offender * * * attempts or threatens to inflict physical harm on another[.]"
 {¶ 12} To establish that Mr. Suggs committed a trespass required proof that he knowingly entered or remained on the land of another "without privilege to do so." R.C. 2911.21(A)(1).
 {¶ 13} Mr. Suggs' challenge to his conviction of aggravated burglary focuses on two specific elements of the offense: trespass and purpose to commit a criminal offense. Mr. Suggs argues that the State failed to prove the trespass element of aggravated burglary: that he entered or remained in the upstairs apartment without the privilege to do so. Mr. Suggs focuses his argument primarily on the fact that no one testified that he did not have permission or privilege to enter the apartment. Mr. Suggs contends that, although the State presented evidence that he kicked the door in, that evidence was not sufficient to establish that he lacked a privilege to enter. He argues in his brief that "[i]t is very possible that defendant had the privilege to enter the apartment any way he wanted; be it either by turning the knob, or pushing the door down[.]"
 {¶ 14} The State is permitted to establish its case through either direct or circumstantial evidence and both types of evidence inherently possess the same probative value. State v.Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. Circumstantial evidence need not, as Mr. Suggs asserts, be "irreconcilable with any reasonable theory of the accused's innocence[.]" See id. "The trier of fact may rely on circumstantial evidence and all reasonable inferences arising therefrom in arriving at its verdict." State v. Cloud, 7th Dist. No. 98 CO 51, 2001-Ohio-3396.
 {¶ 15} Circumstantial evidence that Mr. Suggs first forced S.R. to knock on the door, and then kicked the door in after no one answered, could lead to a reasonable inference that he did not have the privilege to enter the apartment. See State v.Hart, 2nd Dist. No. 19556, 2003-Ohio-5327, at ¶ 43 (holding that evidence that the front door was broken down and kicked in permitted a reasonable inference that the defendant did not have permission to enter the premises). Moreover, it would have been unreasonable for the jury to infer, absent some corroborating evidence, that Mr. Suggs had the privilege to enter the upstairs apartment by kicking in and damaging the door, property that was not owned by the tenant of the apartment. The more reasonable inference was that Mr. Suggs kicked in the door because he did not have privilege to enter the apartment. Consequently, the jury's conclusion that Mr. Suggs trespassed in the upstairs apartment was supported by the evidence.
 {¶ 16} Mr. Suggs also contends that the State failed to prove that he trespassed with purpose to commit a criminal offense. Specifically, Mr. Suggs argues that the State failed to prove that, at the moment he entered the upstairs apartment, he had the purpose to commit a criminal offense. Mr. Suggs does not dispute that, once inside, he discovered Hilton with another man and began assaulting both of them. Mr. Suggs' argument is based solely on the facts as they existed before he entered the upstairs apartment. He insists that the State was required to prove that he had the specific intention to commit a criminal offense at that time.
 {¶ 17} The Ohio Supreme Court has held, however, that, "[f]or purposes of defining the offense of aggravated burglary pursuant to R.C. 2911.11, a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass."State v. Fontes, 87 Ohio St.3d 527, syllabus, 2000-Ohio-472. The evidence was undisputed that, after Mr. Suggs kicked in the door and discovered Hilton with another man, he became angry, entered the apartment, and began to assault them both. He was trespassing at the time his attack began. Both Hilton and the companion fled from the apartment to escape him. This circumstantial evidence was sufficient to support a reasonable inference that, even if he did not initially have the requisite purpose, Mr. Suggs formed the purpose to commit a criminal offense while trespassing in the upstairs apartment.
 {¶ 18} Mr. Suggs also challenges his conviction of abduction pursuant to R.C. 2905.02(A)(1), which provides: "No person, without privilege to do so, shall knowingly * * * [b]y force or threat, remove another from the place where the other person is found[.]" Mr. Suggs contends that the State failed to establish that he knowingly forced S.R. to go with him to the upstairs apartment. Instead, he contends that she voluntarily accompanied him.
 {¶ 19} The testimony of S.R., however, demonstrates that she did not voluntarily accompany Mr. Suggs. S.R. testified that she went with Mr. Suggs to the upstairs apartment and later out of the apartment building and down the street because Mr. Suggs demanded that she help him find Hilton. S.R. testified that Mr. Suggs told her that if she did not help him find Hilton, she "would get hit just like the rest of them," and that he did not care that she was only 14. S.R. further testified that, during the incident, Mr. Suggs threatened her approximately ten different times and, even though he did not ultimately harm her, S.R. believed Mr. Suggs' threats that he would hit her if she did not do as she was told.
 {¶ 20} After Mr. Suggs kicked in the door to the upstairs apartment and hit Hilton and her companion, Hilton and the companion fled from the apartment. S.R. observed that attack and had every reason to believe that Mr. Suggs was capable of carrying out his threats. Mr. Suggs then grabbed S.R. by the arm and demanded that she accompany him out of the building and down the street to look for Hilton. Mr. Suggs ran away from S.R. after the police arrived at the scene. The jury could reasonably conclude from this evidence that S.R. did not voluntarily accompany Mr. Suggs to the upstairs apartment or out of the building but that Mr. Suggs had abducted her.
 {¶ 21} Because Mr. Suggs' convictions were not against the manifest weight of the evidence, they were supported by sufficient evidence, and his first and second assignments of error are overruled.
 B. Third Assignment of Error
"Appellant's sixth amendment rights were violated as he received ineffective assistance of counsel."
 {¶ 22} Through his final assignment of error, Mr. Suggs contends that he received ineffective assistance of trial counsel. In evaluating an ineffective assistance of counsel claim, this Court employs a two step process as described inStrickland v. Washington (1984), 466 U.S. 668, 687,80 L.Ed.2d 674. First, the court must determine whether there was a "substantial violation of any of defense counsel's essential duties to his client." State v. Bradley (1989),42 Ohio St.3d 136, 141; State v. Lytle (1976), 48 Ohio St.2d 391, 396. Second, the court must determine if prejudice resulted to the defendant from counsel's ineffectiveness. Bradley,42 Ohio St.3d at 141-142, citing Lytle, 48 Ohio St.2d at 396-397. Prejudice exists where there is a reasonable probability that the trial result would have been different but for the alleged deficiencies of counsel. Bradley, 42 Ohio St.3d at paragraph three of the syllabus. Defendant bears the burden of proof, and must show that "`counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, ¶ 48-49, quoting Strickland, 466 U.S. at 687.
 {¶ 23} Mr. Suggs contends that his trial counsel erred (1) by requesting a jury instruction on the lesser included offense of abduction without his permission, (2) by failing to conduct discovery in this case, and (3) by failing to object to the State's comments during opening argument about domestic violence between Mr. Suggs and Hilton. The first two errors alleged by Mr. Suggs are not evidenced by the record. There is nothing in the record affirmatively demonstrating that defense counsel did not conduct discovery or that Mr. Suggs did not consent to the instruction on abduction.
 {¶ 24} The final error alleged by Mr. Suggs is that his trial counsel failed to object to comments by the State during its opening statement. Because Mr. Suggs fails to cite to the place in the record where the alleged error occurred, see App.R. 16(A)(3) and (A)(7), this Court has trouble following his argument. Mr. Suggs contends that the prosecutor improperly commented on "domestic violence," but this Court's review of the State's opening statement reveals no such comment. The State did note that Mr. Suggs and Hilton had a "rocky relationship," but it never once indicated that there had been prior violence between the two. Thus, this Court fails to understand how this comment was improper. Moreover, the jury was specifically instructed before the opening statements and again after all the evidence that opening statements do not constitute evidence. See State v.Tibbets (2001), 92 Ohio St.3d 146, 167, 2001-Ohio-132. Mr. Suggs has failed to demonstrate any prejudice resulting from the prosecutor's remark, much less that the outcome of his trial would have been different if his trial counsel had raised an objection.
 {¶ 25} Because Mr. Suggs has failed to demonstrate ineffective assistance of trial counsel, his third assignment of error is overruled.
 III. {¶ 26} The assignments of error are overruled and Mr. Suggs' convictions of aggravated burglary and abduction in the Summit County Court of Common Pleas are affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Baird, J. and Boyle, J. Concur.
[1] Because Mr. Suggs and Hilton did not testify, the status of their relationship is not entirely clear from the record.