OPINION
{¶ 1} Although this appeal was originally assigned to our accelerated calendar, we have elected to issue a full written opinion in accordance with Loc.R.12(5).
 {¶ 2} Defendant-appellant, Josephine E. Keck (hereinafter, "Keck") appeals the July 25, 2003 sentence and conviction of the Municipal Court of Findlay, Hancock County, finding her guilty of operating a motor vehicle under the influence of alcohol ("OMVI") in violation of R.C. 4511.19(A)(1) and 4511.19(A)(3).
 {¶ 3} The procedural history and facts pertinent to the case at bar are as follows.
 {¶ 4} At approximately 12:53 a.m. on May 1, 2003, Deputy Michael A. Cortez, of the Hancock County Sheriff's Department, observed a 1992 blue Mercury Topaz, driven by Keck, make an illegal turn onto railroad tracks off of North Main Street in the vicinity of "Wesley's Bar" in Findlay, Ohio. After observing the car come to a stop in an area on the north side of Wesley's Bar, Deputy Cortez, pulled his vehicle behind Keck's vehicle and activated his cruiser's emergency lights. As Deputy Cortez approached Keck's vehicle on foot, he detected an odor of alcohol. Upon being questioned by Deputy Cortez, Keck stated that she had consumed several alcoholic beverages. After Keck admitted this, Deputy Cortez proceeded to perform standardized field sobriety tests on Keck. After administering the field sobriety tests, Deputy Cortez concluded that Keck was intoxicated.
 {¶ 5} Deputy Cortez arrested Keck and brought her into custody in the Hancock County Sheriff's department. While in custody, Keck submitted to a breath alcohol content test which resulted in a reading of .159 grams of alcohol per 210 liters of breath (.159%). As a result, Keck was charged with OMVI in violation of R.C. 4511.19(A)(1) and (3), and was also charged with Driving Vehicle on Railroad Track, in violation of R.C.4999.01.
 {¶ 6} Keck entered a plea of not guilty to the OMVI charge and subsequently, on June 24, 2003, filed a motion with the trial court to suppress Deputy Cortez's testimony and all evidence gathered by him. A suppression hearing was held on the matter on July 23, 2003, wherein the trial court overruled Keck's motion. Thereafter, on July 25, 2003, Keck entered a plea of no contest to the OMVI charge to which she was found guilty and was sentenced accordingly.
 {¶ 7} Keck now appeals her July 25, 2003 conviction and sentence for OMVI and sets forth two assignment of error for our review.[1]
 {¶ 8} For purposes of clarity and brevity, we will address Keck's first and second assignments of error together.
 ASSIGNMENT OF ERROR NO. I The trial court erred, as a matter of law and to thesubstantial prejudice of the defendant-appellant, by failing tosuppress all evidence gathered by the arresting officer as thearresting officer did not have the requisite level of reasonablearticulate suspicion to execute the initial stop in question.
 ASSIGNMENT OF ERROR NO. II The trial court erred, as a matter of law and to thesubstantial prejudice of the defendant-appellant, by convictingher of an O.M.V.I. violation while driving a motor vehiclepursuant to Ohio Revised Code § 4511.19 as all evidence gatheredby the arresting officer was inadmissible because the arrestingofficer's testimony at the preceding suppression hearing was notcredible and was contradictory.
 {¶ 9} Keck asserts that all of the evidence presented by Deputy Cortez at the suppression hearing was inadmissible because Deputy Cortez lacked the requisite level of reasonable articulable suspicion necessary to have stopped and detained her on the night in question, and therefore, the resulting sentence and conviction for OMVI must be reversed. Contrarily, the state maintains that Deputy Cortez's observations justify the detention and eventual arrest of Keck.
 {¶ 10} An appellate review of a motion to suppress involves questions of both law and fact. State v. Norman (1999),136 Ohio App.3d 46, 51. When ruling on a motion to suppress evidence, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given the evidence presented. State v. Johnson (2000),137 Ohio App.3d 847, 850. An appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. State v. Dunlap (1995), 73 Ohio St.3d 308, 314. However, this process is two-fold, as an appellate court "must then conduct a de novo review of the trial court's application of the law to the facts." State v. Hodge, 147 Ohio App.3d 550,2002-Ohio-3053, at ¶ 9 (citations omitted).
 {¶ 11} The Ohio Supreme Court has held that "where an officer has * * * probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid." Dayton v. Erickson (1996),76 Ohio St.3d 3, 11-12. However, probable cause is not always required for an investigatory stop. Rather, reasonable suspicion of illegal activity is also sufficient to stop a motorist. State v.Bobo (1988), 37 Ohio St.3d 177, 179; citing Terry v. Ohio
(1968), 392 U.S. 1, 21. Reasonable suspicion is defined as the ability of the officer "to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Bobo,37 Ohio St.3d at 178; citing Terry, 392 U.S. at 20-21.
 {¶ 12} Deputy Cortez was the sole witness at the suppression hearing. During the suppression hearing, Deputy Cortez testified that prior to approaching and detaining Keck, he observed Keck make a right turn, without the use of a turn indicator, onto
the railroad tracks that intersect North Main Street. Deputy Cortez then stated that he observed the vehicle travel on therailroad tracks for a short distance before eventually making a sharp right turn off of the railroad tracks and come to a stop in between two trees in a grassy area on the north side of "Wesley's Bar." It was at this point that Deputy Cortez states that he approached the vehicle. He further testified that as he approached Keck's vehicle he detected an odor of alcohol coming from the vehicle and asked Keck if she had consumed any alcohol, to which Keck answered that she had consumed several alcoholic beverages.
 {¶ 13} As the basis of her suppression motion, Keck maintains that Deputy Cortez incorrectly observed her "turn onto" and "drive on" the railroad tracks, but rather contends that based upon the size of her vehicle, the conditions of the tracks, and other obstructions in the area, that it would have been impossible for her to have driven the route as described by Deputy Cortez. While it is true that the trial court did acknowledge that there were some inconsistencies in Deputy Cortez's testimony, for example, that it was unlikely that Keck actually drove on the railroad tracks, the record in the case sub judice contains sufficient evidence to establish that Deputy Cortez had the requisite reasonable, articulable suspicion to stop and eventually detain Keck.
 {¶ 14} For example, a review of the record indicates that regardless of where Keck made her turn off of North Main Street to get to the area near the parking lot on the north side of Wesley's Bar, she failed to use a turn signal when she executed the turn. Keck does not dispute this portion of Deputy Cortez's testimony. Failure to use a turn signal when executing a turn alone is sufficient probable cause to warrant a police stop of a vehicle. Moreover, although Keck maintains that she did not turn onto or drive on the railroad tracks in question, she did take an unconventional path to the parking lot of Wesley's Bar by driving over a sidewalk and through a grassy area before bringing her vehicle to a stop. It is clear from the record that the path which Keck traveled to get to the area behind Wesley's Bar was an unimproved area and was not designated as an entrance to Wesley's Bar. In fact, the proper entrance to the parking area on the north side of Wesley's Bar was around the corner and off of a street that intersects North Main Street.
 {¶ 15} While Deputy Cortez's observations may have been mistaken regarding the exact entry point of Keck's vehicle off of North Main to traverse to the north side of Wesley's Bar, we find that there are specific and articulable facts which reasonably warranted Deputy Cortez to stop and detain Keck. Based upon our review of the record, the trial court's findings are supported by competent, credible evidence. Moreover, the odor of alcohol and Keck's admission that she had been drinking compounded the already established reasonable suspicion to detain her and, in turn, provided sufficient reasonable suspicion to conduct the field sobriety test and breath alcohol content test for possible OMVI charges which led to her arrest.[2] Accordingly, the trial court did not err by overruling Keck's motion to suppress, and further, did not err by convicting her for OMVI in violation of R.C. 4511.19.
 {¶ 16} Keck's assignments of error are, therefore, overruled.
 {¶ 17} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
Shaw, P.J. and Knepper, J., concur.
(Knepper, J., of the Sixth Appellate District, sitting by assignment in the Third Appellate District.)
[1] It appears from the record that the Driving a Vehicle on Railroad Tracks charge was dismissed by the trial court. The trial court also granted Keck a stay of sentence pending resolution of this appeal.
[2] In order for a police officer to conduct field sobriety tests, the police must reach the threshold inquiry of whether reasonable suspicion of criminal activity is present. State v.Richter (Nov. 15, 2000), Union App. No. 14 2000-20, citingState v. Gustin (1993), 87 Ohio App.3d 859, 860; Columbus v.Anderson (1991), 74 Ohio App.3d 768, 770.